UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| GREGORIO CANEL AJBAL, | ) | |
| Petitioner, | ) | |
| v. | ) | Civil No. 26-10190-LTS |
| DAVID WESLING et al., | ) | |
| Respondents. | ) | |

ORDER ON HABEAS PETITION

March 27, 2026

SOROKIN, J.

Gregorio Canel Ajbal, a citizen of Guatemala, initiated this action by filing a petition

pursuant to 28 U.S.C. § 2241 challenging his detention by the respondents.  Doc. No. 1.  On

February 2, 2026, this Court ordered Canel Ajbal's release on bond.  Doc. No. 13.  Before the

Court now are supplemental briefs on a question raised in the February 2 Order: whether "the

denial of bond to Canel Ajbal was . . . a violation of law," where a "binding declaration of law"

by another District Judge applied to Canel Ajbal and bound the respondents.  Doc. No. 13 at 4;

see Doc. Nos. 21, 26.

I.    RELEVANT BACKGROUND

After living in the United States for nearly twenty years, Canel Ajbal was arrested and

detained by U.S. Immigration and Customs Enforcement ("ICE") in December 2025, a few days

after Christmas.  Doc. No. 1 ¶¶ 1–3.  He filed this action in mid-January 2026.  The petition,

filed with the assistance of counsel, alleged Canel Ajbal was entitled to a bond hearing, and it

identified him as "a member of the class of individuals to whom another session of this Court

ha[d] issued [a] class-wide declaratory judgment." Doc. No. 13 at 1. In issuing that declaratory judgment, Judge Saris had determined that detention of class members like Canel Ajbal without providing them a bond hearing was "unlawful" because the governing federal immigration statute, 8 U.S.C. § 1226(a), entitles them "to consideration for release on bond and/or conditions." Guerrero Orellana v. Moniz, No. 25-cv-12664, 2025 WL 3687757, *10 (D. Mass. Dec. 19, 2025).[1] At no time have the respondents disputed that Canel Ajbal is a member of the Guerrero Orellana class.

When the respondents answered Canel Ajbal's petition before this Court, their abbreviated memorandum notified the Court that a bond hearing had "already been scheduled" for Canel Ajbal. Doc. No. 8 at 1 n.1. They also conceded that this case raises a claim similar to those the Court has resolved in many other cases and would likely yield the same result as the Court reached in those cases. Id. at 1. Because a bond hearing was set to occur, the Court saw no reason to order the respondents to hold one (as it has typically done in the cases referenced by the respondents in their answer). It therefore directed the parties to file a status report after the bond hearing. Doc. No. 9. The Court assumed that the scheduling of a bond hearing for this individual, to whom Judge Saris's declaration directly applied, would not be an empty exercise. As far as the Court is aware, the respondents are not in the habit of convening bond hearings before immigration judges ("IJs") for noncitizens they contend are subject to mandatory detention, unless a federal court's order requires them to do so. Thus, the Court expected that the IJ presiding over the bond hearing would follow the law as Judge Saris had declared it, and

---

[1] The respondents have since appealed Judge Saris's decision, but her declaratory judgment has not been stayed. The appeal will be argued before a panel of the First Circuit in May. In other words, the declaratory judgment was binding on the parties in that case—which include the respondents in this case—at the time Canel Ajbal's petition was filed and remains so now.

would release or detain Canel Ajbal after considering the relevant facts and circumstances of his case under the governing legal standard.

The next status report revealed otherwise. Doc. No. 12. Despite "awareness of [Judge Saris's] decision," the IJ continued to apply a 2025 decision by the Board of Immigration Appeals, Doc. No. 12-1 at 1—a decision that, per Judge Saris (and every other session of this Court to have confronted the same circumstances, albeit in cases not involving this petitioner), wrongly construed the relevant detention statutes. 2025 WL 3687757, at *5–7. And so, the IJ determined Canel Ajbal was ineligible for bond, despite Judge Saris's contrary declaration. Id. Had he been eligible, the IJ would have permitted his release on $6,000 bond. Id.

Upon learning these facts, this Court promptly concluded that "the respondents' continued reliance on § 1225 to justify detaining Canel Ajbal violates federal law," and ordered his release "immediately upon the posting of a $6,000 bond." Doc. No. 13 at 3. The Court further ordered the respondents to file a supplemental memorandum "explaining why the denial of bond to Canel Ajbal . . . was not a violation of law" in "disregard" of Judge Saris's "binding declaration of law." Id. at 4. The parties subsequently confirmed that Canel Ajbal paid the bond and was released on February 4, 2026. Doc. No. 14.

The respondents submitted their memorandum on February 20, Doc. No. 21, and Canel Ajbal replied on March 20, Doc. No. 26. In the discussion that follows, the Court resolves the merits of Canel Ajbal's petition and evaluates the respondents' defense of their course of action.

II.    DISCUSSION

A.    Habeas Claims

Though the Court previously ordered Canel Ajbal's release on bond, it did not then resolve the merits of his habeas claims. It does so now.

3

Canel Ajbal's petition raises statutory and constitutional claims that are materially identical to those alleged by petitioners in dozens of other cases this Court has confronted over the past year.  See, e.g., Order, Garcia v. Hyde, No. 25-cv-11513-LTS (D. Mass. July 14, 2025), ECF No. 21; Order, Encarnacion v. Moniz, No. 25-cv-12237-LTS (D. Mass. Sept. 5, 2025), ECF No. 16.  The respondents acknowledge as much in their abbreviated memorandum, where they incorporate by reference their briefing in earlier cases and suggest no further argument is necessary here.  Doc. No. 8.

The Court adheres to its prior reasoning—which has been applied by Judge Saris as to this petitioner and by scores of judges nationwide as to others—and concludes in light of the respondents' concession that Canel Ajbal is not subject to mandatory detention under 8 U.S.C. § 1225(b).[2]  As Judge Saris declared, any effort by the respondents to detain Canel Ajbal is governed by § 1226(a) and, thus, carries with it an obligation to provide him a bond hearing.

Accordingly, the Court hereby ALLOWS the petition.  As far as relief is concerned, the Court already has ordered a substantial portion of it.  Canel Ajbal was entitled to release on the bond identified by the IJ and has secured such release.  As previously ordered, the respondents shall not retaliate against Canel Ajbal for the filing of this action, nor shall they re-detain him

---

[2] The Court is aware that the Fifth Circuit has recently adopted the government's view and endorsed the BIA decision so many other federal courts have rejected.  See Buenrostro-Mendez v. Bondi, 166 F.4th 494 (5th Cir. 2026); but see Bautista v. Santacruz, No. 25-cv-01873, 2026 WL 468284, *9–10 (C.D. Cal. Feb. 18, 2026) (vacating relevant BIA decision under Administrative Procedure Act), appeal filed, Bautista v. Dep't of Homeland Sec., No. 26-1044 (9th Cir. Feb. 23, 2026).  That decision, of course, is not binding here, and the Court finds the reasoning of the dissent more persuasive than that of the majority.  Despite ample prior opportunity, the government has only recently briefed the merits of this issue for resolution by the First Circuit—and the docket in that case reveals that the petitioner, not the government, sought some measure of expedited consideration of the appeal.  See Order, Guerrero Orellana v. Moniz, Nos. 25-2152 & 26-1094 (1st Cir. Feb. 2, 2026).  That appeal will not be argued until later this Spring.

4

absent an individualized showing of changed circumstances.  The petition contained one further

prayer for relief, to which the Court now turns.

> B.    Attorney's Fees

Invoking the Equal Access to Justice Act ("EAJA"), Canel Ajbal seeks an award of fees

and costs.  Doc. No. 1 at 10 (request (7)).  He reiterated this request recently.  Doc. No. 26 at 8.

The Court views Canel Ajbal's entitlement to an award under the EAJA as intertwined, to some

extent, with an assessment of the respondents' efforts to reconcile their treatment of Canel Ajbal

with their obligation to comply with Judge Saris's class-wide declaration.  See id. (arguing

respondents' position was unjustifiable given declaration, warranting EAJA award).

An exception to the general rule that "each party is . . . required to bear its own attorneys'

fees," Castañeda-Castillo v. Holder, 723 F.3d 48, 56 (1st Cir. 2013), the EAJA provides:

> [A] court shall award to a prevailing party . . . fees and other expenses . . . incurred
> by that party in any civil action . . . brought by or against the United States in any
> court having jurisdiction of that action, unless the court finds that the position of
> the  United States was substantially justified or that special circumstances make an
> award unjust.

28 U.S.C. § 2412(d)(1)(A).  The EAJA is "strictly construed in favor of the government," as "it

effectively amounts to a partial waiver of sovereign immunity by the United States."  Castañeda-

Castillo, 723 F.3d at 57.  To secure an award pursuant to this statute, a party must establish

eligibility by satisfying a series of requirements.  See id. (listing four criteria).  The Court

addresses two of them now.[3]

---

[3] The First Circuit has identified four prerequisites.  Castañeda-Castillo, 723 F.3d at 57.  One
concerns the timing of an EAJA request, essentially setting a deadline of thirty days after final
judgment.  28 U.S.C. § 2412(d)(1)(B).  As Canel Ajbal has already made clear—twice—his
intent to pursue a fee award, this requirement should pose no obstacle in this case assuming he
timely submits the necessary information in support of his request.  It also appears unlikely that
the fourth inquiry—whether special circumstances render a fee award unjust—will bar an award
here.

First, Canel Ajbal is plainly "the prevailing party" in a "civil action." This factor has two components: Has Canel Ajbal prevailed, and is this a civil action? The answer to each is a resounding "yes." It is beyond dispute that Canel Ajbal was "awarded some relief" by this Court, that this action yielded "a material alteration of the legal relationship of the parties," and that this Court's "judicial imprimatur" was required to effect that change. See id. at 57 (quoting Aronov v. Napolitano, 562 F.3d 84, 88 (1st Cir. 2009)). The "relief" was Canel Ajbal's release on bond. The "material alteration" of the parties' "legal relationship" was the respondents' involuntary surrender of their position that Canel Ajbal was ineligible for bond. And the "judicial imprimatur" was this Court's February 2 order requiring Canel Ajbal's release on bond. It is difficult to imagine a record more clearly establishing these facts. Canel Ajbal sought release on bond and would not have obtained it but for this Court's decree. He has prevailed. And "[i]t is well settled that habeas corpus is a civil proceeding." Browder v. Dr., Dep't of Corr. of Ill., 434 U.S. 257, 269 (1978). For reasons recently explained by the Third Circuit in this very context, "the EAJA unambiguously applies to habeas challenges to immigration detention under 28 U.S.C. § 2241." Michelin v. Warden, Moshannon Valley Corr. Ctr., Nos. 24-2990 & 24-3198, 2026 WL 263483, at *10 (3d Cir. Feb. 2, 2026).[4]

Second, the respondents' position was not "substantially justified"—especially, but not only, because of Judge Saris's declaration in Guerrero Orellana. By the time Canel Ajbal was detained, the respondents were aware that District Judges throughout the First Circuit had repeatedly and (as far as the Court is aware) uniformly rejected the view that the relevant

---

[4] The First Circuit has not yet squarely addressed the "civil action" question in this context. The Court agrees with and adopts here the Third Circuit's reasoning in its entirety, including its analysis of the decisions of other Courts of Appeals on this issue. See Michelin, 2026 WL 263483, at *1–10, 13.

immigration-detention statutes supported treating a noncitizen in Canel Ajbal's position as a person ineligible for bond. See Guerrero Orellana, 2025 WL 3687757, at *1; Bernardo-Rodrigues v. Hyde, No. 25-cv-00553, 2026 WL 370863, at *2 (D. Me. Feb. 10, 2026) (noting government had "opposed every challenge of this kind" asserted in habeas petitions brought by detained noncitizens "even after each district judge in" Maine had "found for petitioners in like cases"). There also existed precedent concerning the detention of noncitizens in Canel Ajbal's position that established "categorical due process requirements" the respondents were not free to treat as "effectively inconsequential to [their] immigration enforcement program within the First Circuit." Bernardo-Rodrigues, 2026 WL 370863, at *3–4 (discussing Hernandez-Lara v. Lyons, 10 F.4th 19 (1st Cir. 2021)). This legal landscape alone powerfully undermines any justification the respondents offer for their insistence that it was reasonable to treat Canel Ajbal as though he were subject to mandatory detention. But here, there is more.

Judge Saris's declaration in Guerrero Orellana defines the law applicable to all members of the class, and binds all respondents, in that case. It has not been stayed—or vacated, or reversed—pending the ongoing appeal. It therefore remains binding as to the parties to that case. See United States v. United Mine Workers of Am., 330 U.S. 258, 293 (1947) ("An order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings."). This is a bedrock principle of our system of law. Canel Ajbal, as a class member, is a party to Guerrero Orellana. All of the respondents in this case are also parties to Guerrero Orellana: the Acting Field Office Director at ICE Boston; the Superintendent of the Plymouth County Correctional Facility; the Acting Director of ICE; and the Secretary of Homeland Security. Compare Doc. No. 1 at 1, with First Am. Pet'n at 1, Guerrero Orellana v. Moniz, No. 25-cv-12664 (D. Mass. Sep. 22, 2025), ECF

7

No. 10.  So are the Acting Director of the Executive Office for Immigration Review and the Attorney General—officials with supervisory authority over IJs.  See First Am. Pet'n at 1, Guerrero Orellana v. Moniz, No. 25-cv-12664 (D. Mass. Sep. 22, 2025), ECF No. 10; see also U.S. Dep't of Just., Executive Office for Immigration Review Organization Chart (July 26, 2017), https://www.justice.gov/d9/2023-05/eoir_org_chart_7.26.2017.pdf [https://perma.cc/E4PY-Q5PM].

This means Judge Saris declared the law as it applies to Canel Ajbal, and her declaration governs any effort to detain him under the relevant immigration statutes.  It also means that the declaration binds the respondents—as well as the officials responsible for overseeing the IJ who presided over Canel Ajbal's bond hearing.  Though it contained no prospective directive—that is, it did not require any respondent to initiate a bond hearing for Canel Ajbal or any other member of the class—when Canel Ajbal invoked the process to which Judge Saris found he was statutorily entitled, the other parties to Guerrero Orellana were not free to disregard her declaration of law or pretend it had no bearing on Canel Ajbal's eligibility for bond.  Cf. Loper Bright Enters. v. Raimondo, 603 U.S. 369, (2024) (quoting Marbury v. Madison, 1 Cranch 137, 177 (1803), and The Federalist No. 78, at 525 (A. Hamilton), in emphasizing "the proper and peculiar province of the courts" "to say what the law is").  Rather, at that point, the respondents were required to obey the law, including as declared by Judge Saris in a case to which Canel Ajbal and each respondent are parties.

Given all this, the respondents' course of action in this case has been substantially unjustified at every turn.  They were not justified in treating Canel Ajbal as subject to mandatory detention upon his arrest by ICE, when Judge Saris had declared otherwise as to Canel Ajbal.  They were not justified in scheduling a bond hearing and then finding him ineligible for bond by

ignoring Judge Saris's unequivocal, binding declaration of the law as it applies to Canel Ajbal, the respondents, and the IJ.  And they are not justified in continuing to defend the lawfulness of these positions now.

The respondents' attempt to reconcile these events with Judge Saris's declaration hinges entirely on 8 U.S.C. § 1252(f)(1), a statute stripping the lower federal courts of the power to issue class-wide <u>injunctive</u> relief where application of the INA is concerned.  Doc. No. 21 at 3–5.  The respondents miss the point.  Conscious of the limits on her authority under § 1252(f)(1), Judge Saris did not issue a class-wide injunction.  <u>See, e.g.</u>, <u>Guerrero Orellana v. Moniz</u>, 808 F. Supp. 3d 167, 186–90 (D. Mass. 2025) (discussing prohibition on class-wide injunctions, availability of class-wide declaratory relief, and ability of class members to "file individual actions to seek relief that § 1252(f)(1) strips the Court of jurisdiction to issue on a class-wide basis").  Her declaration did not, upon issuance, compel the respondents to release Canel Ajbal or to even immediately schedule a bond hearing for him.  Canel Ajbal is not suggesting otherwise, nor is the Court.  But when the respondents did schedule a bond hearing for Canel Ajbal after he was detained, they had to follow the law.  In this case, where the subject of the bond hearing was a party to <u>Guerrero Orellana</u>, the other parties to that case who were bound by Judge Saris's declaration of law were obligated to apply the law to Canel Ajbal as she had declared it.  Per her declaration, Canel Ajbal's detention was governed by § 1226.  It was a violation of law for an IJ, acting under the authority of two different officials who are bound by Judge Saris's declaration, to find Canel Ajbal's detention was <u>not</u> governed by § 1226.  And, to the extent a representative of ICE or the Department of Homeland Security advocated for or acquiesced in such a finding despite Judge Saris's declaration, they likewise violated the law.

9

In sum, the respondents were not substantially justified in treating Canel Ajbal as though he were ineligible for bond, and their defense of having done so is not substantially justified either.  Because Canel Ajbal is the prevailing party in a civil action in which the government's position was not substantially justified, he is entitled to an award of fees and costs under the EAJA.  Further submissions are necessary detailing the amount of that award, as described below.

III.    CONCLUSION

As set forth herein, Canel Ajbal's habeas petition (Doc. No. 1) is ALLOWED.  In addition to the relief already granted, see Doc. No. 13 at 3–4, the Court finds an award of fees and expenses pursuant to the EAJA is warranted.  Within seven days of this Order, Canel Ajbal shall submit "an itemized statement" evidencing "the actual time expended and the rate at which fees and other expenses were computed," as required by the EAJA and any other information supporting the fees and costs to be awarded.  See 28 U.S.C. § 2412(d)(1)(B).  The respondents may file an objection within seven days of the petitioners' submission.  The Court will then resolve the fee award or invite further briefing if necessary.

SO ORDERED.

/s/ Leo T. Sorokin
United States District Judge